## Case No. 12,956.

### SLOO v. LAW et al.

[1 Blatchf. 512;[1] 7 West. Law J. 310.]

Circuit Court, S. D. New York. Oct. Term, 1849.

TRUSTS—CONTINGENCY—REMOVAL OF TRUSTEES—INJUNCTION—DELAY—ASSENT.

1. Where, by a contract between several parties, a trust was created and trustees were appointed, the trust not to take effect, however, till the happening of a certain event: Held, that until the happening of the event the trust was passive, and that before that time the court would not, at the instance of one of the parties, interfere to remove the trustees for alleged misfeasance.

2. Where the joint interest of the parties to a contract in its subject matter has not commenced, the court will not, on the allegation of one party that he is injured by the acts of the others, interfere by injunction against the latter.

3. Where one party to a contract assents to and acquiesces in a delay by the other party in fulfilling the contract, such delay affords no ground for the interference of the court to relieve the former from the consequences of the delay.

In equity. This was a motion for a receiver and an injunction. The bill was filed on the 2d day of November, 1849, for the purpose of rescinding a contract entered into between the plaintiff and George Law, Marshall O. Roberts, Prosper M. Wetmore, and Edwin Croswell, four of the defendants, on the 17th day of August, 1847, by which the latter agreed to build the steam-ships provided for in the fourth section of the act of congress, entitled "An act providing for the building and equipment of four naval steam-ships," passed March 3d, 1847 (9 Stat. 187); or, in case the court should refuse to rescind the contract, that then a specific performance might be decreed, ac-

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

cording to the terms and conditions therein stipulated; and it prayed an account between the parties, &c.

The fourth section of the act in question authorized the secretary of the navy, on behalf of the government, to contract with the plaintiff, for the transportation of the United States mail from New-York to New-Orleans, twice a month and back, touching at Havana and other intermediate ports, and from Havana to Chagres and back, twice a month; the mail to be transported in at least five steam-ships of not less than fifteen hundred tons burden, and propelled by engines of not less than one thousand horse power each, to be constructed under the superintendence and direction of a naval constructor in the employ of the navy department, and to be so constructed as to render them convertible. at the least possible expense, into war steamers of the first class. The section contained a proviso that the secretary, at his discretion, might permit a steamer of not less than six hundred tons burden, and engines in proportion. to be employed in the mail service between Havana and Chagres. It also provided. that the compensation for the service should not exceed the sum of $290,000 annually.

On the 20th of April, 1847, the plaintiff entered into a contract with the secretary of the navy under this act, for the construction of these ships, by which he bound himself to construct and complete them upon a plan and after a model particularly set forth and described in the agreement. It provided, that if the secretary should determine to employ a steamer of not less than six hundred tons burden for the service between Havana and Chagres, in lieu of one of the five ships of fifteen hundred tons burden, the plaintiff should build one of that description. The first two ships were to be completed and in readiness for the service on or before the 1st of October, 1848: and the remaining two of fifteen hundred tons burden. on or before the 1st of October, 1849. with such improvements in model, engines, boilers, and finish, as should be agreed upon by the parties to the contract. There was no limitation as to the time within which the fifth steam-ship, in respect to which the secretary reserved the right to reduce the size, should be completed and ready for service. The secretary, on behalf of the government, in consideration of the premises, agreed to pay to the plaintiff, as a compensation for the full performance of the service in carrying the mail, the $290,000 per annum, payable quarterly. It was further provided, inasmuch as the ships would be completed at different periods within the time limited, that each of them should commence the service as soon as she should be in all respects ready therefor according to the terms of the contract; that a proportionate part of the compensation stipulated for the whole service, should be paid for the partial service thus rendered; and finally, that the contract should continue in force for the period of ten years, the term to commence

from the actual commencement of the service as specified.

On the 17th of August, 1847, the plaintiff entered into an agreement with the defendants Law, Roberts, Wetmore, and Croswell, by which, in consideration of an assignment of his contract with the government to three trustees, of whom Law and Roberts were two, and the defendant Bowes R. McIlvaine the third, they covenanted and agreed to construct, finish and completely equip the five steam-ships, in such manner and at such times as were or might be required by the navy department, and to provide and pay all moneys necessary therefor, and in all things to fulfil and perform all the duties and services which the plaintiff had agreed should be done and performed, in his contract with the government; the ships and their machinery to be built, and the vessels equipped, under the superintendence and control of Law. It was also covenanted and agreed, that the assignment of the plaintiff's contract to the three trustees should be upon the following trusts: 1. That the trustees should cause the steam-ships, as they should from time to time be built, to be registered in their names. and should have the sole management and direction of the ships, and of each of them, and of their employment; should appoint and pay all such officers, agents, and other persons, as should be deemed necessary and proper, either for the sailing or navigating of the vessels, or for the management of the business thereof at the various ports and places at which they might trade or stop, on such terms. for such times, and with such powers and duties, as to them might seem fit and proper; should make all necessary contracts and agreements for the employment of the vessels; and should exercise and perform all such powers and duties in the premises, as might be necessary for performing the duties and services required by the navy department, or for the advantage and profit of the parties concerned. 2. That the trustees should collect and receive all the freights and earnings of the vessels, and all sums to be paid by the government for transporting the mail, or which might become due or payable on account thereof, and make all disbursements of every kind incurred ·in the employment of the vessels. 3. That the trustees should render to the parties to the contract respectively, quarter yearly, an account in writing of all their receipts and expenditures in the discharge of their trust, the first account to be rendered at the expiration of three months from the commencement of the service by the steam-ships or any of them; and should apply the nett earnings which should remain at the expiration of every quarter, after paying all disbursements of the vessels, charges, and expenses of every kind to which the trustees might be subjected, in the first place to the payment of $12,500 quarterly, one half to the plaintiff, and the other half to the other contracting parties, and the residue to the repayment of all other advances made by the latter, ratably, in proportion to the

amounts advanced by them respectively in building, equipping, and finishing the ships, together with legal interest, and a commission of ten per cent. on all sums so advanced. 4. That when all the moneys so advanced pursuant to the agreement, in building and completing the ships, with interest, and commissions, and all expenses and responsibilities incurred by the defendants, parties to the contract. or by the trustees, should be satisfied and paid, then the trustees should divide the nett earnings. including those from the mail service, quarterly, into two equal parts, whereof one should be paid to the plaintiff, and the other to the other contracting parties; and then the vessels to be held by the trustees, in trust for the plaintiff and those parties in equal shares. It was further provided, that the trustees might consent to any modification of the contract which the navy department should require, and which, in their opinion, might be for the advantage of the parties; and that any modification, renewal, or continuance of the mail contract, at any time obtained from congress or the navy department by either of the parties. should enure to their joint benefit.

The bill of complaint, which was founded upon these several agreements, and particularly upon that of the 17th of August, 1847, charged, that the contracting defendants undertook the construction of two steam-ships, in pursuance of their contract, to be called the Ohio and the Georgia, but, in the summer of 1848, became unable to proceed to the completion of the same for want of funds; that thereupon the trustees, to prevent the entire suspension of the work, and the forfeiture of the plaintiff's contract with the government, assumed upon themselves the building and completion of the two ships, in their character as trustees, and for that purpose procured a modification of the contract, and an advance of money from the government, in pursuance of the act of congress of the 3d of August, 1848 (9 Stat. 267), to wit, the sum of $290,000; and that, in order to secure the repayment of the moneys so advanced. and in conformity with the provisions of the act, the trustees. on the 9th of September, 1848, executed a mortgage of the two ships to the defendant Wetmore, as trustee for the government. The bill further charged, that the trustees procured a further modification of the contract, whereby it was agreed, that the steam-ship Falcon should be received in lieu of the smaller ship contracted to be built; that said ship had been employed in carrying the mails between New-York and New-Orleans, and Havana and Chagres, since the month of December, 1848, and also freight and passengers, under the direction of the trustees; that they had been receiving from the government a compensation under the contract at the rate of $5,000 per month. and for freight and passengers at the rate of $10,000 per month; that the trustees, by the aid of these funds, and the advance from the government, had

completed the steam-ship Ohio, with the exception of coppering her, and were proceeding to finish the Georgia; that Law, Roberts, and Wetmore, for the purpose of defrauding the plaintiff, and depriving him of his interest in the Ohio and the benefit of his contract, did, on the 19th of September, 1849, register the Ohio in their names as individual owners, against the remonstrance of the plaintiff; that the Ohio was so far completed that she had been put upon the line, and was employed in the service of carrying the mail from New-York to New-Orleans, but that the contracting defendants denied that she had been accepted by the government, or was employed in that service under the trust; that Law and Roberts refused to co-operate with the other trustee, McIlvaine, in managing the affairs of the ship, or to permit McIlvaine to participate in their management, according to the express terms and conditions of the agreement; that Law, who had the management of the construction of the steam-ships. neglected and refused to copper the Ohio, though often requested, by reason whereof the plaintiff was in danger of having his contract with the government declared to be broken and forfeited, and of suffering irreparable loss and damage; that the contracting defendants had broken their contract with the plaintiff, had failed to construct and finish the two ships ready for service by the 1st of October, 1848, had put but one into the service, and that not till the month of September, 1849, and then unfinished for want of coppering. and had advanced for the construction of the two ships, the Ohio and Georgia, not to exceed $190,000, though the construction must have cost over $400,000; that the balance required to be advanced had been realize' from the government and the earnings of the Falcon; that the two ships which were to have been built by the 1st of October, 1849, had not yet been commenced; that the plaintiff was in danger of having his contract forfeited, by the neglect and refusal of those defendants to proceed and construct those ships according to the requirements of the navy department; and that, by reason of the fraudulent conduct of Law and Roberts, two of the trustees, as well as of the other contracting defendants, the property of the plaintiff in the ships constructed, as well as the benefits and advantages of his contract with the government, were in danger of being lost and destroyed, to his great and irreparable damage. unless a receiver should be appointed to take charge of the ships, their freight, mail pay, and other earnings. and to copper the Ohio, and comply in all other respects with the conditions of the plaintiff's contract with the government. The bill then prayed for an account; that Law and Roberts, two of the trustees, be removed from their trust; that it be referred to a master to appoint two other fit persons as trustees; that. in the meantime. a receiver be appointed to take charge of the contract with the government.

to take possession of the ships Ohio and Georgia, and to finish them under the direction of the court, to take charge of the Falcon until her place could be supplied by another vessel to be built, and to receive the earnings of these ships, and appropriate the same as the court might direct; that the registry of the Ohio might be set aside, and the ship be registered in the name of the receiver, or of the trustees when appointed; that the contract of the 17th of August, 1847, be annulled, and an account taken of the advances made by the contracting defendants towards the construction of the ships, and, on those advances being refunded by the plaintiff, the property of said ships be transferred to him, subject only to the mortgage to the government; or, that a specific performance of the contract be decreed by the court, and if the contracting defendants should neglect or refuse to proceed and forthwith construct said ships, then the plaintiff be permitted to construct and complete them at his own expense, and to stand in the place of the contracting defendants, in respect to the benefits and advantages of the contract; that an injunction issue against the contracting defendants, to restrain them from conveying away the Falcon, and from interfering with the Ohio and Georgia, and from conveying away the Ohio under the fraudulent registry, and from preventing the return of the Ohio and Falcon to the port of New-York; that the receiver to be appointed be directed to proceed forthwith and construct and complete the ships in fulfilment of the contract with the government, at the cost and expense of the plaintiff, and out of the funds to be furnished by him for that purpose, and out of the earnings to be received from the employment of the ships; and that Law, Roberts, and Wetmore, the defendants in whose names the Ohio was registered, be restrained from conveying her away or preventing her return to the port of New-York, and from interfering with the receiver to be appointed to take charge of her.

Daniel Lord, for plaintiff.
George Wood, for Law.
Francis B. Cutting, for Roberts.
Charles O'Conor, for Wetmore.
James R. Whiting, for Croswell.

NELSON, Circuit Justice. The grounds of complaint in this case arise out of alleged infractions of the contract of the 17th of August, 1847, by which the defendants Law, Roberts, Wetmore, and Croswell bound themselves, for considerations therein stated, to construct and complete the five steam-ships, and to perform in all other respects the duties and obligations of the plaintiff under his contract with the government of the 20th of April in the same year. There are also charges and grounds of complaint against the trustees of that contract, and of the ships to be constructed and completed ready

for service; all of which is put forth as the foundation for the summary interposition of the court, to prevent great and irreparable loss and damage to the plaintiff. To this end we are asked: 1. To remove two of the trustees, and, in the meantime, until others are appointed in their places according to the ordinary course of the court, to appoint a receiver to take charge of the contracts with the government and with the defendants, and to take possession and charge of the ships constructed or in the process of construction, and to complete the same, and to proceed in all other respects under the direction of the court and carry into complete execution the terms and conditions of the aforesaid contracts. 2. To enjoin the defendants from interfering with the receiver thus appointed, or with the ships or their earnings, and from conveying away either of them so as to prevent the receiver from taking them into his possession.

The grounds upon which we are asked to remove the trustees are: 1. That two of them, Law and Roberts, who are also parties in interest in the construction of the ships and in the fulfilment in all other respects of the plaintiff's contract with the government, have excluded their co-trustee McIlvaine, who represents the plaintiff's interest in the ships and their earnings, and in the proper management of the joint concern, from any participation in the same; that they have denied the plaintiff's interest, and the right of his trustee to act in the premises, and are collecting and appropriating to their own use and benefit the earnings of the ships, and the moneys received from the government for the mail service. 2. That they have repudiated the trust, by fraudulently procuring the ship Ohio to be registered in their own names individually, and not as trustees, excluding the name of the other trustee, McIlvaine. 3. That they have neglected and refused to render to the plaintiff an account of the moneys received from the earnings of the Falcon and Ohio, including compensation for the mail service, and are appropriating the same to their own benefit, in disregard of the trust.

These are the grounds mainly relied on in support of this preliminary motion to remove the two trustees and appoint a receiver; and it is apparent that, in order to comprehend the force and effect of them for the purposes claimed, we must first ascertain the precise powers and duties belonging to the trustees under the contract, and whether it confers upon them those in respect to which a breach and misfeasance have been charged. Their powers and duties are prescribed in the contract of the 17th of August, and to that, therefore, we must apply ourselves in endeavoring to ascertain their character and the extent of them.

Upon a careful examination of this contract it will be seen, that the trustees have nothing to do with the construction of the

ships, either in respect to the contracts for building, the funds to be provided, or the superintendence and direction in the process of construction and equipment. These are obligations and responsibilities resting exclusively upon the other defendants, which they assumed upon themselves and are bound to discharge; and the principal consideration for which is their interest, as stipulated, in the assigned contract with the government, and in the other earnings of the ships while engaged in the mail service. There are other advantages provided for, which doubtless had their influence; but these are the main considerations for the undertaking. Those defendants took the place of the plaintiff as the contractor with the government, so far as related to the construction and equipment of the five ships, and were subject only to the superintendence and direction of the naval constructor in the employment of the navy department—a power reserved by the secretary. The trust remains entirely passive until the ships or some one of them are constructed and ready to enter upon the mail service; and it is provided that then the trustees, to whom the government contract had already been assigned, shall cause them to be registered in their names, and shall thereafter have the sole management and direction of the ships and of their employment in the mail service and in carrying freight and passengers, of the collection and receipt of the earnings, including the moneys received from the government, and of the disbursement of the expenses, and shall account and pay over the nett earnings, according to the directions and in the proportions specially pointed out in the trust.

Now, in view of the provisions thus referred to, and some others which we shall hereafter consider, we have been unable to resist the conclusion, that, according to the plain and obvious import of the contract of the 17th of August, the trust therein created does not begin to operate or become active until the ships or some one of them have been built and completely equipped, ready for the mail service, and have been accepted by the navy department; and that, down to that time, it is passive and inoperative, as no power is conferred, or duty enjoined, upon the trustees in respect to the ships, until they are accepted and prepared to commence the mail service.

There is another view arising out of the provisions of the contract, and bearing upon this construction, which seems to be equally decisive. The joint interest in the ships between the parties does not arise until they are accepted under the government contract. There is no stipulation or arrangement for the employment of the ships out of that service; on the contrary, the whole agreement is based upon it. If the vessels are not accepted, they are thrown back upon the hands of the defendants, and remain their prop-

erty, subject to the mortgage. The ships are the only security they have for their outlays in the construction. If a loss is sustained in the building, they alone must bear it. Neither the plaintiff nor the trustees are at all concerned.

It was supposed on the argument, that the advance of money by the government, under the act of the 3d of August, 1848, operated to vest an interest in the ships in the plaintiff. But this is an obvious misapprehension. The only security for the repayment of that advance is the ships; and, in the event of their not being accepted by the government, the defendants stand alone responsible. The money advanced must be repaid by them, or be realized, if at all, out of the ships, which are their property.

Again. The interest of the plaintiff in the earnings of the vessels, and which it is admitted creates an equitable right in the ships themselves and a direct interest in their proper management, does not begin until they are accepted and have entered upon the performance of the mail service. Till then, by an express provision in the government contract, no compensation is to be paid; and the provisions in the contract with the defendants, regulating the receipts and disbursements of the earnings, and the duty of the trustees to account therefor, are all based upon the employment of the vessels in that service. There are no joint accounts or joint interest spoken of or provided for, until that begins; then the partnership interest commences, and is placed under the active management and control of the trustees.

This conclusion is also supported by the general structure and arrangement of the articles of agreement. The plaintiff brings into the common stock the government contract, which was and is, doubtless, regarded as very valuable; the defendants, the steam ships; and, when the ships are accepted in fulfilment of the contract, the common interest commences, and the whole of the capital—the government contract, the ships, and their management—is placed in charge of the trustees. This is the foundation of the arrangement between the parties. The additional provisions relate chiefly to the manner of carrying on the enterprise, for the common benefit, of disposing of the profits, and of winding up the concern at the end of the partnership.

The plaintiff might have provided for an accruing interest in the ships, and also for the vesting of the title to the same in the trustees, while they were in the process of construction; thereby acquiring additional security for the fulfilment of the contract on the part of the defendants. But no such provision has been made. He chose to take their personal responsibility; and very naturally, as they had become his security to the government for the performance of this very service. It is but just to add that, for

anything appearing in the case or disclosed on the hearing, they are quite competent and able to perform their engagements.

The act of the parties, in securing the advance made by the government towards the construction of the two ships, by a mortgage upon them, was very strongly urged, on the argument, against this construction. The mortgage was executed in the name of the three trustees. The act of congress provided that the advance should be secured by a lien on the ships, in such manner as the secretary of the navy should require. With all our respect for the judgment and intelligence of that officer, we must still construe the contract and give effect to it according to the convictions of our own judgments. No doubt all parties, as it respects the government, are estopped from controverting the validity of the lien. If the ships should never be accepted, and the advance not be refunded by the discount of the mail compensation, the ships would remain in the hands of the defendants subject to the lien, and to a sale under the mortgage, unless they should discharge it by payment. Neither the mode of executing the mortgage, nor the mortgage itself, can in any respect, or on any principle or rule of construction, vary or modify the contract of the 17th of August. That is between different parties, and involves different interests and rights.

The conclusion at which we have arrived upon this branch of the case, disposes of the question as to the removal of the trustees, and, as a necessary consequence, of the application for the appointment of a receiver, and the granting of an injunction. It also disposes of the question arising upon the registry of the Ohio. As that vessel has not yet come under the trust, the registry was properly entered in the names of her builders and owners.

In respect to the delay in the construction and equipment of the steam-ships, and the action of the court prayed for in this preliminary proceeding to be founded thereon, it is a sufficient answer to say, that, from the affidavits read upon the hearing, it appears that the delay has been assented to and acquiesced in by all the parties concerned, and has been occasioned by the very great enlargement of the tonnage and capacity of the ships. This has not only been assented to by the plaintiff, but was adopted by the defendants upon his urgent solicitation. Four of the ships provided for in the contract were to be of fifteen hundred tons burden, and to have machinery in proportion. The two nearly completed, the Georgia and Ohio—the latter entirely, with the exception of coppering—are almost equal in tonnage to the four, with machinery in proportion, and, as stated in the opposing affidavits, will cost an amount nearly equal to the cost of the four. Some indulgence on the part of the government might therefore be naturally expected. The plaintiff is as deeply interested in the enlargement of the capacity of the ships, as the defendants. The government is also interested, as one of the objects of the act of congress providing for their construction, was an eventual employment of them in the naval service of the country. For this reason, the act provides that they shall "be so constructed as to render them convertible, at the least possible expense, into war steamers of the first class." The contract contains a similar provision, and also one for taking them into the exclusive service of the government.

In respect to the preliminary arrangement with the government, by which the Ohio and Falcon are employed in the mail service between New-York and New-Orleans, and Havana and Chagres, and the equitable interest of the plaintiff in the earnings of those vessels, no questions arising out of those matters are enquirable into in this stage of the proceedings. They will properly come up when the case is ready for a final hearing on pleadings and proofs.

The motion for a receiver and an injunction must be denied.

[For the subsequent proceedings in this cause, see Case No. 12,957.]